**STAGE STORES, INC., Appellant**

v.

**Jon GUNNERSON, Appellee**

NO. 01–13–00708–CV

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued October 8, 2015

Russell S. Post, Constance H. Pfeiffer, William R. Peterson, Alex B. Roberts, Beck Redden LLP, Houston, TX, Michael F. Lauderdale, McAfee & Taft, P.C., Oklahoma City, OK, for Appellant.

Thomas F.A. Hetherington, Blaire Bruns Johnson, Edison, McDowell & Hetherington LLP, Houston, TX, William M. Corrigan, Jr., Armstrong Teasdale LLP, St. Louis, MO, for Appellee.

Panel consists of Justices Keyes, Higley, and Brown.

## OPINION

Laura Carter Higley, Justice

Following an arbitration hearing and award, Stage Stores, Inc. filed an application to vacate the arbitration award. Jon Gunnerson filed a response and an application to confirm the arbitration award. Gunnerson's application also sought the award of attorneys' fees. The trial court denied Stage's application to vacate the arbitration award, denied Gunnerson's request for attorneys' fees, and granted the application to confirm the arbitration award. In one issue on appeal, Stage argues that the trial court erred by denying its application to vacate the arbitration award on the ground that the arbitrator exceeded her authority. In one issue on cross-appeal, Gunnerson argues that the trial court abused its discretion by denying his request for attorneys' fees.

We reverse and remand.

## Background

Stage Stores is a nationwide department store retailer with brands including "Palais Royal," "Bealls," and "Goody's." It is headquartered in Houston. Gunnerson was a senior executive for Stage for six years. In February 2010, he was promoted to Senior Vice President Director of Stores for the Houston Division. He entered into an employment contract as a part of obtaining that position.

The employment contract includes an arbitration provision, requiring the parties to submit any disputes relating to the employment contract to arbitration. Arbitration is subject to the Federal Arbitration Act ("FAA") and the rules of the American Arbitration Association. The provision does not specify a form for the arbitration award.

The contract also contains provisions for various methods of terminating the contract. One method in particular, "By the Executive for Good Reason," permitted Gunnerson to receive certain financial benefits upon termination. That method also contained certain requirements, including advance notice of the grounds supporting good reason and an opportunity to cure.

On July 2, 2012, Gunnerson submitted a resignation letter to Stage. In the letter, Gunnerson explained that he was invoking the "By the Executive for Good Reason" method for terminating the contract. Stage refused to pay the benefits available under that method. Gunnerson initiated an arbitration proceeding, challenging the refusal.

Gunnerson and Stage selected an arbitrator. After a preliminary hearing, the arbitrator issued a "Report of Preliminary Hearing and Scheduling Order." In the order, the arbitrator noted that, by agreement of the parties, the form of the award would be a "reasoned award."

In its opening argument at the hearing, Stage Stores raised the notice and cure requirements of the contract as a basis for rejecting Gunnerson's claim. During Gunnerson's testimony at the hearing, both sides questioned him about the notice and cure requirements and whether the requirements had been satisfied. In its closing argument, Stage Stores again raised the notice and cure requirements as a basis for rejecting Gunnerson's claim.

Following the hearing, the arbitrator issued an initial award. The initial award determined that Gunnerson was entitled to recover his attorneys' fees and costs, but did not identify the amount awarded. After the arbitrator issued the initial award, the parties submitted briefing on the matter of Gunnerson's fees and costs. The trial court then issued a final award.

The only difference between the initial and final awards was that the final award included the amount of fees and costs awarded. The awards are four pages in length. They contain a statement of jurisdiction, an identification of the parties, a statement of the issues, a recitation of certain procedural facts, the arbitrator's rulings, and the arbitrator's damage awards.

In the section identifying the issues under consideration, the arbitration award identifies Gunner's main argument to be that, by "restructur[ing] the Company's organization chart such that Gunnerson no longer directly reported to [the CEO] but instead to another Senior V.P....[,] [Stage] materially reduced, decreased or diminished Gunnerson's nature and status within the Company, thereby providing him with good reason to resign, pursuant to paragraph 4.4.3(iii) of the Agreement." For Stage, the award identifies two of its main arguments: that Gunnerson "voluntarily elected to leave his job as a result of another job offer, and ... the changes to the organizational structure do not rise to the level of a material reduction, decrease or diminution of his status within the organization."

In the rulings section, the award provides four specific rulings: (1) that a valid contract existed between the parties; (2) that Stage's "actions in restructuring the organization and removing [Gunnerson] from a direct reporting relationship to the CEO diminished [Gunnerson's] status, thereby allowing [Gunnerson] to terminate his position for good reason pursuant to paragraph 4 of the Agreement"; (3) that Gunnerson was entitled to recover attorneys' fees; and (4) that Gunnerson "failed to meet his burden of proof regarding the present value of future stock options." The arbitration award then includes the specific amount of damages awarded to Gunnerson.

Stage then filed an application to vacate the award in the trial court. Gunnerson filed a response and an application to confirm the arbitration award. In his application to confirm the award, Gunnerson requested the trial court to award him attorneys' fees because Stage's application to vacate the award was "without justification." Following a hearing, the trial court denied Stage's application to vacate the award, denied Gunnerson's request for attorneys' fees, and granted Gunnerson's application to confirm the award.

### Arbitration Award

In its sole issue on appeal, Stage argues that the trial court erred by denying its application to vacate the arbitration award.

### A. Standard of Review & Applicable Law

The dispute between the parties at arbitration concerned whether a certain provision in Gunnerson's employment agree-

ment was satisfied. The employment agreement provided that any disputes relating to the agreement are subject to arbitration according to the FAA.

### 1. Review of Award

■■■ There are two general guiding principles of arbitration that are particularly relevant to our review here. The first is that arbitration is a matter of contract. *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). "Ultimately, arbitrators derive their powers from the parties' agreement." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir.2011). Our review of an arbitration award, then, typically focuses on whether it gives effect to the parties' contractual arbitration agreement. *See id.* at 843 n. 13 ("We refer to contractual provisions regarding the scope or form of the arbitration.").

■■■ The second guiding principle is that arbitration is designed as an efficient, less-costly alternative to judicial litigation. *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex.App.–Houston [1st Dist.] 2010, no pet.). The FAA

> substantiat[es] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and timeconsuming judicial

review process, and bring arbitration theory to grief in post arbitration process.

*Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S.Ct. 1396, 1405, 170 L.Ed.2d 254 (2008) (internal citations and quotations omitted); *Cat Charter*, 646 F.3d at 845. As a result, judicial review of an arbitration award is extraordinarily narrow and we vacate an arbitration award only in very unusual circumstances. *See Oxford Health Plans LLC v. Sutter*, —— U.S. ——, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013) (holding courts only vacate arbitration award in very unusual circumstances); *Rain CII Carbon*, 674 F.3d at 471–72 (holding review of arbitration award is extraordinarily narrow). Although the parties have broad authority to modify by contract many of the standard rules for arbitration, the parties cannot expand the grounds for vacatur injudicial review. *Hall Street*, 552 U.S. at 578, 128 S.Ct. at 1400.

■■ Instead, Section 10 of the FAA provides the exclusive grounds upon which a reviewing court may vacate an arbitration award. *Id.* at 576, 128 S.Ct. 1396, 1405; *Rain CII Carbon*, 674 F.3d at 473 (citing 9 U.S.C.A. § 10 (West 2009)). Stage's application for vacatur concerns the fourth ground: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." [1] 9 U.S.C.A. § 10(a)(4).

---

1. The central dispute in this appeal is whether the arbitration award was so deficient that it failed to satisfy the parties' agreement that the award would be "reasoned." Other courts to review this issue have framed the determination of whether the arbitration award was reasoned as a question of whether the arbitration panel "exceeded its authority." *See Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir.2011); *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th

Cir.2012). We believe the better way to frame the issue of whether the arbitration award was reasoned is to ask if the award is so deficient that the arbitrator "so imperfectly executed [its powers] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10(a)(4) (West 2009). This is only a shift in nomenclature, however. We otherwise find the cases reviewing this issue on point and persuasive, and we apply the same principles that flow

Similarly, the parties cannot modify by contract the standard or scope of judicial review of an arbitration award. *Cat Charter*, 646 F.3d at 843 n. 13 (citing *Hall Street*, 552 U.S. at 578, 128 S.Ct. at 1400). Instead, we must review the award under a number of well-established requirements that flow from the principle of maintaining the efficiency and reduced cost of arbitration. *Royce Homes*, 315 S.W.3d at 85–86; *Rain CII Carbon*, 674 F.3d at 471–72. In order to protect the strong deference accorded to arbitration awards, we review de novo the trial court's ruling to vacate or confirm an arbitration award. *Rain CII Carbon*, 674 F.3d at 472.

In contrast, our review of the underlying arbitration award is "exceedingly deferential." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir.2007). We review a challenge to an arbitration award under a "heavy presumption" in favor of confirming the award, and we must resolve all doubts in favor of arbitration. *Cat Charter*, 646 F.3d at 842; *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir.2002). Accordingly, a "party seeking relief under [subsection 10(a)(4) of the FAA] bears a heavy burden. 'It is not enough ... to show that the [arbitrator] committed an error—or even a serious error.'" *Oxford Health Plans*, —— U.S. ——, 133 S.Ct. at 2068 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 1767, 176 L.Ed.2d 605 (2010)). Ultimately, our review is a determination of whether the "[a]ward [is] so deficient that it warrant[s] sending the parties back to square one." *Cat Charter*, 646 F.3d at 842; *accord* 9 U.S.C.A. § 10(a)(4) (allowing vacatur when arbitrator so imperfectly executed her powers "that a mutual, final, and definite

award upon the subject matter submitted was not made").

## 2. Interpretation of Parties' Agreement

The parties agreed that the arbitrator would issue a "reasoned award." The parties dispute on appeal what "reasoned award" means and whether the arbitration award was reasoned. We review de novo the trial court's interpretation on the parties' agreement for the form of the arbitration award. *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir.2000). "[C]ourts have generally been reluctant to vacate awards challenged on the grounds that their form was improper." *Rain CII Carbon*, 674 F.3d at 473 (citing *Cat Charter*, 646 F.3d at 842 n. 12).

## B. *Functus Officio* Exception

In order to fully frame the scope of our review, it is important to identify another requirement in reviewing a ruling on a challenge to an arbitration award. "[A] court is required to enforce an arbitration award *only* as written by the arbitrator." *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir.2003). If an arbitration award conforms to the parties' agreement, courts must confirm the award. 9 U.S.C.A. § 9 (West 2009). In contrast, we must vacate the award if the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

This is not a strictly binary determination, however. An award that is ambiguous, for example, cannot be enforced. *Brown*, 340 F.3d at 216. In that situation, "the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities."

from the question of whether section 10 of the FAA was violated, regardless of the specific

language in section 10 that is relied on as a basis for this determination.

*Id.; accord Murchison Capital Partners v. Nuance Commc'ns, Inc.*, 760 F.3d 418, 423 (5th Cir.2014). Once any ambiguities are resolved, the court rules on the challenge to the enforcement of the arbitration award. *See Brown*, 340 F.3d at 216.

■■■ The authority for a court to remand an ambiguity to an arbitrator for clarification is an exception to what is known as the *functus officio* doctrine. *See id.* at 219. The *functus officio* doctrine is "a common law rule that bars an arbitrator from revisiting the merits of an award once the award has been issued." *Id.* at 218. While once strictly enforced, a number of exceptions to the rule have arisen. *Id.* at 218–19. Under one exception, remand to the arbitration panel is appropriate to allow the panel to "clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation." *Id.* at 219. Under another exception, remand to the arbitration panel is appropriate to allow the panel to "decide an issue which has been submitted but which has not been completely adjudicated by the original award." *Id.* Another exception permits a remand to "correct a mistake which is apparent on the face of [the] award." *Id.* On remand, the arbitration panel cannot retry any already resolved issues. *See id.* at 221. But the panel can complete the adjudication and clarify any existing ambiguities. *See id.*

■■■ Accordingly, if a trial court, in the course of determining an action to confirm or vacate an arbitration award, determines that the award (1) contains a mistake apparent on the face of the award, (2) is ambiguous in its scope or implementation, or (3) fails to completely adjudicate the matters raised in arbitration, then the court must remand the matter to the arbitrator for a clarification or completion of the award. *See Brown*, 340 F.3d at 216,

219; *Murchison Capital*, 760 F.3d at 423 (citing *Oil, Chem. & Atomic Workers Int'l Union, Local 4–367 v. Rohm & Haas, Tex., Inc.*, 677 F.2d 492, 495 (5th Cir. 1982)). Thereafter, the court rules on the confirmation action. *See Brown*, 340 F.3d at 216, 219; *Murchison Capital*, 760 F.3d at 423.

## C. "Reasoned Award"

■■■ The parties agreed that the form of the award would be a "reasoned award." The parties did not provide any definition of "reasoned award" or any further detail of what constitutes a reasoned award. In its motion to vacate, Stage argued that the award was not reasoned and, accordingly, should be vacated. Gunnerson argued that the award was reasoned and, as a result, should be confirmed. The parties raise the same arguments on appeal. Accordingly, before we can determine if the award is reasoned, we must first determine what "reasoned award" means. "We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex.2009).

As an initial matter, we note that the agreement for a reasoned award is not contained in the arbitration provision in Gunnerson's employment agreement. Instead, it appears in the "Report of Preliminary Hearing and Scheduling Order" from the arbitration records. The parties conducted the arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Rule R42(b) of the then-applicable Commercial Arbitration Rules provides, "The arbitrator need not render a reasoned award unless the parties request such an award in writing *prior to appointment of the arbitrator* or unless the arbitrator deter-

mines that a reasoned award is appropriate."[2] AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R–42(b) (2009) (emphasis added).

The same situation arose in *Cat Charter*. The court noted that the arbitration rules permit the parties to vary the procedure established by the rules. *Cat Charter*, 646 F.3d at 840 n. 6 (citing AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R–1(a)). They can still be amended after arbitration has begun if the parties have the consent of the arbitrator. *Id.* The court questioned whether the arbitrator was bound to deliver a reasoned award "[g]iven the deference we accord arbitrators in determining arbitral procedures." *Id.* Even so, the court interpreted the notation in the arbitration scheduling order "to be sufficient 'consent' within the meaning of Arbitration Rule R–1(a), and assume[d] that the parties validly altered the procedures to require a reasoned award when they subsequently communicated with the Panel." *Id.*

Neither party argues that the arbitrator could issue anything less than a reasoned award. Further, as we explain below, the content of the award reflects that the award provided at least some reasoning for the outcome of the award. Accordingly, for the purposes of this appeal, we conclude that the arbitrator's notation in the scheduling order that the parties agreed to a reasoned award functions either as the consent of the arbitrator to amend the rules or as a determination by the arbitrator that a reasoned award was appropriate. *See id.*; AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R–1(a), R–42(b).

Absent an agreement to the contrary, an arbitrator issues a "standard award," which simply announces a result without any reasoning or explanation. *Cat Charter*, 646 F.3d at 844. "At the other end of the spectrum, the Arbitration Rules allow parties to request that the arbitrators make 'findings of fact and conclusions of law,' a relatively exacting standard familiar to the federal courts." *Id.*; *see also Green*, 200 F.3d at 975 (holding " 'findings of fact' and 'conclusions of law' are familiar terms in legal parlance with reasonably plain meanings").

In contrast to these well-known terms, the Eleventh Circuit determined that "reasoned award" was "a somewhat ambiguous term left undefined by the FAA [and] the Arbitration Rules." *Cat Charter*, 646 F.3d at 843. As Stage recognizes, "reasoned award" has not been defined by a Texas state court.[3]

Nevertheless, Stage argues that "reasoned award" is "a familiar legal term . . . . defined by the Commercial Arbitration treatise and is the prevailing practice in most industrialized nations." Stage relies on two sources to support this claim. *See* 3 THOMAS H. OEHMKE WITH JOAN M. BROVINS, COMMERCIAL ARBITRATION § 118:5 (3d ed.2003); Stephen L Hayford, *A New Paradigm for Commercial Arbitration: Rethinking the Relationship Between Reasoned Awards and the Judicial Standards*

---

**2.** The parties' agreed to a reasoned award on October 25, 2012. The Commercial Arbitration Rules of the American Arbitration Association were amended, effective October 1, 2013. The same rule exists in identical form under the new rules as rule R–46(b). *See* AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES R–42(b) (2013).

**3.** The San Antonio Court of Appeals has, however, determined the meaning of the phrase "include a brief, written opinion addressing the issues before them" in the context of an arbitration award. *See SSP Holdings Ltd. P'ship v. Lopez*, 432 S.W.3d 487, 495 (Tex. App.–San Antonio 2014, pet. denied).

*for Vacatur,* 66 GEO. WASH. L.REV. 443, 444–45 (1998). Oehmke and Brovins assert, "A reasoned award would usually include a detailed listing, or at least mention, of expressions or statements offered as a justification of the arbitral decision." 3 OEHMKE, BROVINS, COMMERCIAL ARBITRATION § 118:5. They provide no authority for this assertion, however. They further assert that "a reasoned award should offer enough facts and legal principles to ascertain the reasons for the ultimate award," but the cases they rely on do not address the definition of "reasoned award." *See id.* (citing *Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060 (1st Cir.1995); *Armstrong v. Commodity Futures Trading Com'n,* 12 F.3d 401 (3d Cir.1993)).

Likewise, Hayford concedes that, "contrary to the prevailing practice in other industrialized countries, commercial arbitrators in the United States seldom articulate their reasons for decision in their written awards." Hayford, 66 GEO. WASH. L.REV. at 444–45. Hayford's article then argues for why "reasoned awards" *should* be used in the United States, not that they are used regularly with a well-defined meaning within any U.S. jurisdiction. *Id.* at 446. Accordingly, "reasoned award" is not a "familiar legal term" within the context of U.S. arbitration proceedings, and we must still determine its meaning.

While "reasoned award" is not a "familiar legal term" in the context of U.S. arbitration proceedings, that does not mean it was without meaning at the time the parties and the arbitrator agreed that the arbitrator would issue a "reasoned award." Instead, at the time of the agreement for a reasoned award, two federal courts had defined the term, the Eleventh Circuit in *Cat Charter* and the Fifth Circuit in *Rain CII Carbon. Cat Charter,* 646 F.3d at 844; *Rain CII Carbon,* 674 F.3d at 473.

In *Cat Charter,* the court noted that Webster's defined "reasoned" as " 'provided with or marked by the detailed listing or mention of reasons.' " 646 F.3d at 844 (quoting Webster's Third New Int'l Dictionary: Unabridged 1892 (1993)). "Reason" was defined as " 'an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure.' " *Id.* (quoting Webster's Third New Int'l Dictionary: Unabridged 1891)). From these definitions, the court concluded, "Strictly speaking, then, a 'reasoned' award is an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of an act—the 'act' here being, of course, the decision of the Panel." *Id.* The court held that "a 'reasoned award is something short of findings and conclusions but more than a simple result.' " *Id.* (quoting *Sarofim v. Trust Co. of the W.,* 440 F.3d 213, 215 n. 1 (5th Cir.2006)).

In *Rain CII Carbon,* the court quoted *Cat Charter* at length over the meaning of "reasoned award." 674 F.3d at 473–74 (citing *Cat Charter,* 646 F.3d at 842, 844, 846). It also recognized the court's previous holding that the detail and specificity required of a reasoned award falls between a standard award and findings of fact and conclusions of law. *Id.* at 473 (citing *Sarofim,* 440 F.3d at 215 n. 1).

Because the parties did not create their own definition of "reasoned award," and because these cases represent the prevailing definition of "reasoned award" within the context of an arbitration proceeding under the FAA, we adopt the definition provided by these courts. We hold, then, that the detail and specificity required of a "reasoned award" falls between a standard award and findings of fact and conclusions of law. *Rain CII Carbon,* 674 F.3d at 473; *Cat Charter,* 646 F.3d at 844. We further

hold that a "reasoned award" is "an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of ... the decision of the Panel" or arbitrator. *Cat Charter*, 646 F.3d at 844.

Before turning to the analysis of these legal principles, it is important to emphasize that determining whether an award is a "reasoned award" is a question of form, not substance. The scheduling order expressly stated that "reasoned award" was the parties' agreement as to the *form* of the award. Similarly, *Cat Charter* recognizes that the determination of whether an award is reasoned is a review of the form of the award. *Id.* at 844 ("Logically, the varying *forms* of awards may be considered along a 'spectrum of increasingly reasoned awards,' with a 'standard award' requiring the least explanation and 'findings of fact and conclusions of law' requiring the most. In this light, therefore, a 'reasoned award is something short of findings and conclusions but more than a simple result.'" (emphasis added; internal citations omitted)).

Accordingly, our review is limited to whether the award was in the form of a reasoned award. *See id.* We do not review whether the substance of the award is correctly reasoned or well reasoned. *See Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir.2012) ("A court sits to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it."); *see also Oxford Health Plans*, —— U.S. ——, 133 S.Ct. at 2068 ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.").

## D. Analysis

 A review of the award reveals that, even if the arbitrator was not completely successful, the award largely conforms to the requirements for being a reasoned award. As an initial matter, the arbitrator's award is four pages in length and contains more than just a recitation of which party wins and what the recovery is. Near the beginning of the arbitration award, the arbitrator wrote, "For the reasons set forth herein, the Arbitrator concludes that the Claimant has met his burden of proof in part, and failed to meet his burden of proof in other respects, but is entitled to the relief set out below." The award also contains a statement of jurisdiction, an identification of the parties, a statement of the issues, a recitation of certain procedural facts, the arbitrator's rulings, and the arbitrator's damage awards. This is clearly more than a standard award. But this does not establish that it was a reasoned award. *See Rain CII Carbon*, 674 F.3d at 474 ("[I]t is clear that, in eight pages, the arbitrator rendered more than a standard award, which would be a mere announcement of his decision. Thus, the remaining question is whether the arbitrator's award is sufficiently more than a standard award so as to be a reasoned award.").

In the section identifying the issues under consideration, the arbitration award summarized all but one of the parties' main arguments. The award identifies Gunner's main argument to be that, by "restructur[ing] the Company's organization chart such that Gunnerson no longer directly reported to [the CEO] but instead to another Senior V.P.... [,] [Stage] materially reduced, decreased or diminished Gunnerson's nature and status within the Company, thereby providing him with good reason to resign, pursuant to paragraph 4.4.3(iii) of the Agreement." For

Stage, the award identifies two of its main arguments: Gunnerson "voluntarily elected to leave his job as a result of another job offer, and ... the changes to the organizational structure do not rise to the level of a material reduction, decrease or diminution of his status within the organization."

In the rulings section, the award provides four specific rulings: (1) a valid contract existed between the parties; (2) Stage's "actions in restructuring the organization and removing [Gunnerson] from a direct reporting relationship to the CEO diminished [Gunnerson's] status, thereby allowing [Gunnerson] to terminate his position for good reason pursuant to paragraph 4 of the Agreement"; (3) Gunnerson was entitled to recover attorneys' fees; and (4) Gunnerson "failed to meet his burden of proof regarding the present value of future stock options." The arbitration award then includes the specific amount of damages and attorneys' fees to which Gunnerson was entitled.

Generally, this award contains the same amount of explanation as those upheld in *Cat Charter* and *Rain CII Carbon*. In *Cat Charter*, the pertinent portion of the arbitration award consisted of six paragraphs. 646 F.3d at 840–41. Each of the paragraphs summarized the claim asserted by the claimants and identified which party had prevailed "by the greater weight of the evidence." *Id.* Only one paragraph contained more detail than this. *Id.* at 841. The arbitration award then identified the total amount of money to be paid, including damages, fees, costs, and interest. *Id.* The court held that this amounted to a reasoned award. *Id.* at 845. The court noted that the determination of each claim "turned primarily on credibility determinations." *Id.* at 844. The court held that finding for one party by the greater weight of the evidence "is easily under-

stood to mean that ... the Panel found the Plaintiffs' witnesses to be more credible." *Id.* at 844–45. Accordingly, the award met the minimum requirements for being a reasoned award. *Id.* at 845. While the award could have provided more detail, "had the parties wished for a greater explanation, they could have requested that the Panel provide findings of fact and conclusions of law; to this court, the [explanation given in the award] is greater than what is required in a 'standard award,' and that is all we need decide." *Id.*

In *Rain CII Carbon*, the arbitration award was eight pages long. 674 F.3d at 474. The argument for vacatur "hinge[d] on the summary nature of the arbitrator's statement that, based upon all of the evidence, he found that the initial price formula should remain in effect." *Id.* The court rejected this argument because it "ignore[d] that the preceding paragraph thoroughly delineate[d] Rain's contention that Conoco had failed to show that the initial formula failed to yield market price, a contention that the arbitrator obviously accepted." *Id.* The court held that vacatur in that situation would be "inconsistent with the deference owed to arbitral awards and the congressional policy favoring arbitration of commercial disputes, and is also contrary to the interest of finality." *Id.*

Nevertheless, Stage argues that the award is not a reasoned award because the arbitration award failed to address one of its key defenses: that Gunnerson failed to provide the requisite notice and opportunity to cure in order to avail himself of the good-cause termination provision. Gunnerson denies that notice and cure was one of Stage's key defenses and argues, accordingly, the arbitration award did not need to address it in order to be a reasoned award. We disagree with Gunnerson.

Stage's attorneys raised the notice and cure requirements as a defense during opening and closing statements. During his testimony at the hearing, both sides questioned Gunnerson about the notice and cure requirements and whether the requirements had been satisfied. Pursuant to the terms of the contract, giving sufficient notice and opportunity to cure was a condition of receiving the money he sought in the arbitration proceeding. Accordingly, we hold that Stage sufficiently identified and argued the matter in the arbitration proceeding and that the matter was significant enough to merit some reasoning in the award.

The dissent would have us hold that the arbitrator's failure to address this issue in the award does not prevent the award from being reasoned. Relying on *Cat Charter* and *Rain CII Carbon*, the dissent reasons that the arbitration award need only identify "issues" and not "arguments." We cannot agree with the dissent's interpretation of these cases.

In *Cat Charter*, the appellant argued that the award was not reasoned because the award only determined that the opposing party had proven its case "by the greater weight of the evidence." 646 F.3d at 844. Instead of holding the award did not need any reasoning to explain the issue, the court held that, based on the facts of the case, no further reasoning was necessary because the only matter at issue was credibility of the witnesses. *Id.* at 844–45. The necessary conclusion is that, when more than credibility of the witnesses is at issue, more reasoning is necessary. *See id.*

*Rain CII Carbon* bears this out. In *Rain CII Carbon*, the appellant complained that the award only determined that, "based upon all of the evidence, ... the initial price formula should remain in effect." 674 F.3d at 474. The dissent to

this opinion suggests that this is all that is necessary for an award to be reasoned. But the Fifth Circuit did not hold that this was all that was necessary. Instead, the court held that the greater detail needed was supplied elsewhere in the award. *See id.* ("[T]he preceding paragraph thoroughly delineates Rain's *contention* that Conoco had failed to show that the initial formula failed to yield market price, a *contention* that the arbitrator obviously accepted." (Emphasis added.)). Accordingly, we find no support for the dissent's argument in the opinions on which the dissent relies.

Before determining the ramification of failing to identify and address one issue in what appears to otherwise be a reasoned award, we will address other claims for deficiencies in the award. Stage points out that, under the employment contract, Gunnerson had good cause to resign only if Stage "materially reduce[d], decrease[d], or diminishe[d]" Gunnerson's position or responsibilities. Stage claims that, while she found that Stage had diminished Gunnerson's position, the arbitrator failed to find that the diminution was material. We agree with Gunnerson that this type of argument has already been rejected in *Rain CII Carbon*. In *Rain CII Carbon*, Conoco argued that the arbitration award failed to provide sufficient reasoning in the award's simple assertion "that, based upon all of the evidence, [the arbitrator] found that the initial price formula should remain in effect." 674 F.3d at 474. The court rejected this argument, pointing out that, in making the argument, "Conoco ignores that the preceding paragraph thoroughly delineates Rain's contention ... [which] the arbitrator obviously accepted." *Id.*

Here, the arbitration award includes a section identifying the issues presented by the parties. The award states Gunnerson's main argument was that Stage "*ma-*

*terially* reduced, decreased or diminished Gunnerson's nature and status within the Company." The award further states that one of Stage's main defenses was that "the changes to the organizational structure do not rise to the level of a *material* reduction, decrease or diminution of his status within the organization."

The arbitration award, in its section identifying the rulings of the court, determined that Stage "diminished [Gunnerson's] status." Based on this, Stage would have us conclude that, after recognizing that both parties were disputing whether the changes were material, the arbitrator either (1) somehow forgot that this was a central dispute between the parties and simply determined that some diminution had occurred or (2) decided it was not material, intentionally ignored this central dispute, and decided to find in Gunnerson's favor anyway. "Such a narrow approach is inconsistent with the deference owed to arbitral awards and the congressional policy favoring arbitration of commercial disputes, and is also contrary to the interest of finality." *Id.* Reading the award as a whole, we hold that the clear, logical inference is that the arbitrator determined that the diminution in Gunnerson's status was material.

Lastly, Stage identifies two problems with the award of attorneys' fees that, it argues, shows that the arbitration award was not reasoned. First, Stage argues that the arbitrator inappropriately determined that Gunnerson was entitled to attorneys' fees in the interlocutory award when the parties had not yet submitted the issue for consideration. Second, Stage argues that the final award only adds the amount of the attorneys' fees award without any explanation.

For the claim that the arbitrator prematurely decided the matter of attorneys' fees, Stage asserts that the parties "agreed that arbitration would be bifurcated. The arbitrator would decide liability first and, if Gunnerson prevailed, the parties would later submit briefing and argument about whether he was entitled to attorney's fees." Stage provides no citations to the record to support the claim that such an agreement exists, however. *See* Tex. R. App. P. 38.1(i) (requiring briefs to contain appropriate citations to the record); *Manon v. Solis*, 142 S.W.3d 380, 391 (Tex.App.–Houston [14th Dist.] 2004, pet. denied) (holding appellate court has no duty to search voluminous record without sufficient guidance from appellant to determine whether assertion of reversible error is valid). Accordingly, we have no basis for determining what the agreement between the parties actually was and what limitations the arbitrator agreed to for the initial award. Without this, we cannot determine what effect any premature ruling may have had on the final arbitration award.[4]

For the complaint that the final award only adds the amount of attorneys' fees without any explanation for the amount, Stage asserts that it argued to the arbitrator "that the award of fees was not mandatory under the contract; that Gunnerson had not submitted any proof that the fees sought were reasonable and necessary as required by Texas law; and that Gunnerson sought recovery of fees and costs that are unavailable under Texas law." Stage complains that the final arbitration award only adds the amount of the fees awarded without specifically addressing any of its arguments.

4. *But see Rain CII Carbon*, 674 F.3d at 473–74 (rejecting argument that error in initial award that was corrected in the final award can be basis for determination that award was not reasoned).

As Stage recognizes, the final award gave Gunnerson the full amount of attorneys' fees and costs that he requested. From this simple fact, anyone reading the award must conclude that the arbitrator rejected each of Stage's arguments for why something less than the full amount could be awarded. Furthermore, this was not a central dispute between the parties. While the arbitrator considered the matter separately from the rest of the parties' dispute, the record for attorneys' fees is a mere fraction of the entire record. Gunnerson's motion for fees consisted of three pages. Stage's response consisted of ten pages. Gunnerson's reply was eleven pages. Including exhibits, the matter of attorneys' fees takes up about 140 pages of a 1,614–page record. These 140 pages include a 60–page deposition, of which, two pages were referenced in the response to the motion. If any hearing was held on the matter, it is not a part of the record. Accordingly, this does not establish any further deficiency in the award.

## E. Disposition

■ We have held that the award generally conforms with the requirements for an award to be reasoned but that the award's failure to provide any reasoning regarding Stage's third contention prevents a determination that the award is reasoned. We must determine, then, the ramifications of failing to identify and address this key defense. Stage argues that, because the award fails to address this third defense, we must vacate the entire award. We cannot agree.

When it is ambiguous, an award cannot be enforced but must instead be remanded back to the arbitrator for clarification under an exception to the *functus officio* doctrine. *See Brown*, 340 F.3d at 216, 218–19. Another exception applies when the award fails to completely adjudicate

the matters raised in arbitration. *Id.* at 219. When an exception to the *functus officio* doctrine applies, "the court must remand the award to the arbitrator with instructions to clarify the award's particular ambiguities." *Id.*; *accord Murchison Capital*, 760 F.3d at 423. Once any ambiguities are resolved, the court rules on the challenge to the confirmation of the arbitration award. *See Brown*, 340 F.3d at 216.

Here, the arbitration explicitly identified and disposed of Gunnerson's claim and two of Stage's key defenses. It failed, however, to identify and provide any amount of reasoning for ruling against Stage's defense of notice and cure. We cannot fill in this gap for the arbitrator. *See id.* We can, however, have the trial court remand it to the arbitrator to decide an issue which was raised but not completely adjudicated by the original award. *See id.* at 219. After the arbitrator issues a revised award accounting for this deficiency, the matter will return to the trial court for final determination of whether the award should be confirmed or vacated. *See id.* at 216.

We sustain Stage's sole issue.

### Attorneys' Fees

In his sole issue on cross-appeal, Gunnerson argues that the trial court abused its discretion by denying his request for attorneys' fees. Gunnerson claims the trial court should have granted his request for attorneys' fees because Stage's challenge of the arbitration award was "without justification." *See Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279, 283–84 (5th Cir.1981).

## A. Standard of Review & Applicable Law

■ When a party's challenge to an arbitration award is "without merit" and

its refusal to abide by the award is "without justification," a trial court can award attorneys' fees to the party seeking to confirm the arbitration award. *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1331 (5th Cir.1994) (citing *Tex. Steel,* 639 F.3d at 283). We review the trial court's ruling on the request for attorneys' fees for an abuse of discretion. *Tex. Steel,* 639 F.3d at 283. The fact that a party loses its challenge to confirmation of the award does not establish that the challenge was "without merit." *Id.* In contrast, the fact that a challenge to the arbitration award is framed as falling within a recognized ground for vacatur does not establish that the challenge was justified. *See id.* Instead, we must determine whether the challenge, "properly characterized," is without merit. *Id.* at 284.

## B. Analysis

As an initial matter, Stage argues that the "without justification" basis for attorneys' fees only applies to arbitration in labor disputes, not arbitration proceedings in general. We disagree because the Fifth Circuit has considered this basis for attorneys' fees outside of arbitration in labor disputes. *See Executone Info. Sys.,* 26 F.3d at 1316–17, 1331 (considering "without justification" basis for attorneys' fees following arbitration between company and shareholders of merged company).

 Gunnerson argues that Stage's application to vacate the arbitration award was without merit because "[i]t was a direct attack on the merits of [the arbitrator's] underlying decisions, and was based on arguments that, remarkably, were undermined by the very law Stage cited." Accordingly, Gunnerson asserts that the trial court abused its discretion by not awarding him attorneys' fees incurred in defending the application to vacate the arbitration award. Given that we have sus-

tained Stage's issue concerning the matter, we cannot conclude that Stage's complaints about the award are without merit.

We overrule Gunnerson's sole issue.

## Conclusion

We reverse the trial court's confirmation of the arbitration award. We remand to the trial court (1) to draft a remand to the arbitrator for clarification on the arbitrator's disposition of Stage's notice and cure defense and (2) for further proceedings upon issuance of the revised arbitration award.

Justice Brown joining the majority and concurring.

Justice Keyes, dissenting.

Harvey Brown, Justice, concurring.

This case presents an issue of contract interpretation: What did the parties mean when they agreed to a "reasoned award"?

The Court holds that the "award's failure to provide any reasoning regarding Stage's third contention prevents a determination that the award is reasoned." It concludes that, under an exception to the *functus officio* doctrine, the matter can be remanded to the arbitrator to complete the adjudication of the award. I agree with the Court and join it. But I would also go further and directly hold that the award is not reasoned—not simply say that we are prevented from determining that the award is reasoned. I write separately to explain why the arbitrator's award was not "reasoned."

"[T]he scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all— the quick resolution of disputes and the avoidance of the expense and delay associ-

ated with litigation."[1] "A court sits to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it."[2] To determine whether the arbitrator "did her job," we examine the parties' agreement, which describes that job and the procedures to be used in the arbitration.[3]

## The Award Was Not "Reasoned" Under the Definition Used by *Cat Charter*

### A. A reasoned award must at least mention the parties' key contentions

I agree with the Court that we look to the generally accepted meaning of the phrase "reasoned award" as used in the parties' agreement. The Court, following the Eleventh Circuit's decision in *Cat Charter*, concludes that an award is "reasoned" so long as it "mention[s] ... expressions or statements offered as a justification."[4] The Eleventh Circuit's definition was not based on the use of that phrase in arbitration proceedings but on one dictionary definition of the word "reasoned."

Nevertheless, the *Cat Charter* definition is a helpful place to begin for three

reasons. First, the *Cat Charter* definition predates the parties' agreement. Second, other courts have relied on that definition, including *Rain CII Carbon, LLC v. ConocoPhillips Co.*,[5] which was issued before the parties' agreement by the circuit court with federal jurisdiction over Texas. Third, other authorities have produced similar definitions. For example, in their treatise on commercial arbitration, Thomas Oehmke and Joan Brovins write: "A reasoned award would usually include a detailed listing, or at least mention, of expressions or statements offered as a justification of the arbitral decision."[6] Similarly, other scholars have equated a "reasoned award" with an award that reveals "the arbitrator's mode of decision."[7] All of these definitions require some discussion of the arbitrator's justifications for her decision—albeit sometimes so short as to be described as merely mentioning the justification.

*Cat Charter* and *Rain CII Carbon* demonstrate that the award must respond to the losing party's key contentions. In *Cat Charter*, the Eleventh Circuit held that an award was reasoned because it said: "[W]e find that Claimant ... has proven its claim

1. *MCI Constructors, LLC v. City Of Greensboro*, 610 F.3d 849, 857 (4th Cir.2010).

2. *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 527 (4th Cir.2000) (internal quotation marks omitted).

3. *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 586, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008) (holding that Federal Arbitration Act permits parties to choose many features of their arbitration including variety of procedural issues).

4. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir.2011).

5. 674 F.3d 469, 473 (5th Cir.2012).

6. *See* 3 THOMAS H. OEHMKE WITH JOAN M. BROVINS, COMMERCIAL ARBITRATION § 118:5) (3d ed.2003).

7. Stephen L Hayford, *A New Paradigm for Commercial Arbitration: Rethinking the Relationship Between Reasoned Awards and the Judicial Standards for Vacatur*, 66 GEO. WASH. L. REV. 443, 445 (1998). It also describes reasoned awards as "substantive." *Id.* at 448, 455, 460–61. The Alabama Supreme Court described Professor Hayford as "a recognized authority on judicial review of arbitration awards." *Birmingham News Co. v. Horn*, 901 So.2d 27, 53 (Ala.2004), *overruled by Horton Homes, Inc. v. Shaner*, 999 So.2d 462 (Ala. 2008), *overruled by Hereford v. D.R. Horton, Inc.*, 13 So.3d 375 (Ala.2009).

against [Respondent] by the greater weight of the evidence."[8] Importantly, the controversy in that case "turned primarily upon credibility determinations made by the [Arbitration] Panel. Either the transaction proceeded along the lines of a duly executed contract—the Defendants' story—or the transaction ... was punctuated by misrepresentations and dubious behavior on the Defendants' part— the Plaintiffs' story."[9] Thus, looking at the circumstances of that case, the award explained the arbitrators' decision "in the swearing match between the Plaintiffs and the Defendants, the Panel found the Plaintiffs' witnesses to be more credible."[10]

In *Rain CII Carbon*, the Fifth Circuit also looked at the entire set of circumstances of the arbitration in concluding that the arbitrator addressed the parties' key contentions. There, the arbitrator was asked to determine which of two price formulas more accurately estimated the true market price of green anode coke.[11] The arbitrator made this decision "based upon the testimony, exhibits, arguments, and submissions."[12] The Fifth Circuit held that this award was "reasoned" because "the preceding paragraph thoroughly delineates [the defendant's] contention ... a contention that the arbitrator obviously accepted."[13] That "contention" was a detailed argument explaining why the defendant's formula was more accurate. Thus, the award did not lack reasoning; rather, the arbitrator merely adopted the reasoning articulated by one of the parties.

*Cat Charter* and *Rain CII Carbon* demonstrate that the entire set of circumstances surrounding the arbitration must be considered in determining whether an award qualifies as "reasoned." And, because the circumstances of those cases demonstrated why the arbitrators had rejected the losing parties' contentions, neither court addressed whether there may be situations when a reasoned award must do more than merely mention a justification.

## B. The award does not mention one of Stage's key contentions

The award here does not mention any justification for rejecting the third of Stage's key contentions—notice and an opportunity to cure—because the award both (1) failed to identify this contention and (2) consider or explain why the arbitrator rejected it.

### 1. The section of the award identifying the parties' contentions omits Stage's third contention

The employment agreement provides compensation benefits to Gunnerson if he terminates the agreement for "good reason." Good reason includes any action by Stage that "materially reduces, decreases or diminishes the nature, status or duties and responsibilities" of Gunnerson provided that Gunnerson gives "notice to the Company of the existence of the event or condition within ninety (90) days of the initial existence of the event or condition and, upon receipt of such notice, the Company has a period of thirty (30) days during which to cure the event or condition." Additionally, good reason does not include "voluntary retirement of the Executive or any other voluntary action taken by" Gunnerson.

---

8. *Cat Charter*, 646 F.3d at 844.

9. *Id.*

10. *Id.* at 844–45.

11. *Rain CII Carbon*, 674 F.3d at 471.

12. *Id.* at 471, 474.

13. *Id.* at 474

In opening statements, Stage addressed materiality, voluntariness, and lack of notice and opportunity to cure. On the issue of notice, it argued:

> But he had already decided to leave. Before he even gave Stage any sort of notice, it was over.... He resigned and he left. And remember, there's a 30-day cure period. Well, there was no opportunity to cure and he left before the end of the 30 days anyway. So even assuming, which we very much disagree with, that there was a breach of 4.4.3(iii), there wasn't an opportunity to cure. And we believe the evidence is going to show what the real reason [for his resignation] was: He wanted to go back home ... He wanted to go into business with his best friend.... He wanted to be the CEO. He wanted to be an owner.

Stage argued the following regarding opportunity to cure:

> Did Stage really have an opportunity to cure? And Mr. Gunnerson admits that if he didn't give them a chance to cure, then he doesn't have good reason. Or had Mr. Gunnerson already made up his mind to leave? And if he had made up his mind to leave before he provided notice, then this decision is pretty easy, because there was no opportunity to cure.

In final argument, Stage again addressed the lack of notice and opportunity to cure:

> Mr. Gunnerson was also aware, it is undisputed, that he had to provide notice, that it had to be in writing, that it had to set forth the event and condition. He testified, if he didn't set forth the event and condition he admits he didn't have good reason. He also admits that if he didn't give Stage the opportunity to cure within 30 days, he doesn't have good reason.

Thus, Stage argued that Gunnerson did not have good cause not only because (1) the diminution in his status was not material and (2) he voluntarily left Stage to take another job with his brother's company in Ohio, but also because (3) he never provided Stage with notice or an opportunity to cure.

In her summary of the parties' contentions, the arbitrator only identified two major arguments—materiality and voluntariness—by Stage:

> Respondent asserts that Claimant voluntarily elected to leave his job as a result of another job offer, and that the changes to the organizational structure do not rise to the level of a material reduction, decrease or diminution of his status within the organization. As a result, Respondents take the position that no termination payment is due under the terms of the Agreement.

Thus, the award does not identify Stage's third and critical contention that Gunnerson did not give Stage proper notice of or an opportunity to cure any material alteration in "the nature, status, or duties and responsibilities" from his position as Senior Vice President, Director of Stores.

**2. The section of the award containing the rulings does not address Stage's third key contention**

Likewise, the arbitration award's three rulings—the first of which was undisputed—do not address Stage's third key contention. Rather, the arbitrator simply announced that Gunnerson's diminished status was good cause. Merely stating that one party wins because that party prevailed on the ultimate issue does not satisfy *Cat Charter* if the award does not "mention" a "justification" for why that party won, unless the dispute is a "swearing match" between the parties or other circumstances make the reasoning clear.

### The Award Was Not "Reasoned" Under More Typical Definitions

Although the arbitration award was not reasoned under *Cat Charter*, I write separately to explain why, in my opinion, the *Cat Charter* definition is unsatisfactory.

The *Cat Charter* definition is a useful starting point but not adequate for all circumstances. For a more comprehensive definition, it is useful to look at the common and legal usage of the word "reasoned" before October 2012, when the parties agreed that the arbitrator would issue a reasoned award. It is also important to consider the parties' reasons for choosing a reasoned award. From these, I would conclude that, in some circumstances, a reasoned award requires not only the mention of a justification but also some further elaboration. In my view, the circumstances of the case and the parties' contentions are critical issues in determining whether a brief statement that only "mentions" a justification is sufficient to provide a reasoned award.

#### A. Reasons parties seek a reasoned award

Requiring a reasoned award to include the arbitrator's justification, without the level of detail and expense associated with findings of fact and conclusions of law, corresponds with the general purposes of reasoned awards. Unlike judicial decisions, an arbitrator's award is not subject to review for mistakes of law.[14] But parties may have other reasons to ask for an explanation. Requiring a reasoned basis for a decision helps ensure that the arbitrator critically evaluates the parties' arguments.[15] "A decision maker obliged to give reasons to support his decision may find they do not; 'the opinion will not write.'"[16] Forcing the arbitrator "to put pen to paper" helps crystalize thinking.[17] Moreover, "[a] public statement of . . . reasons helps provide the public with the assurance that creates . . . trust" in the proceedings.[18] Parties who know that the arbitrator considered their contentions and understand why the arbitrator rejected them can also modify their future conduct to avoid similar results.

An award that offers no explanation would accomplish none of these purposes.

#### B. Other uses of the word "reasoned" in legal proceedings focus on substance

A review of the common and legal usage of "reasoned" reveals a more comprehensive rule for identifying the characteristics of a reasoned award. The Oxford English Dictionary defines "reasoned" as: "Characterized by or based on reasoning; carefully studied."[19] "Reasoning" is defined as "the action of the verb reason, especially the process by which one judgment is deduced from another or others which are

14. *Hall,* 552 U.S. at 588, 128 S.Ct. 1396.

15. *Cf. Scott v. Monsanto Co.,* 868 F.2d 786, 791 (5th Cir.1989) (explaining that reasons must be given because a trial court's discretion in granting a new trial is not "impenetrable" and to assure that the court "does not simply substitute [its] judgment for that of the jury").

16. *Arlinghaus v. Ritenour,* 543 F.2d 461, 464 (2d Cir.1976), *aff'd,* 622 F.2d 629 (2d Cir. 1980).

17. *See id.*

18. *Rita v. United States,* 551 U.S. 338, 356, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007).

19. 13 Oxford English Dictionary 292 (2nd ed.1991).

given."[20] The verb "reason" is defined as "[t]o explain, support, infer, deal with, by (or as by) reasoning" and "[t]o think out, to arrange the thought of, in a logical manner."[21] These definitions stress the transparency of the decisionmaking process.

Other dictionaries also define the word "reasoned" in a way that emphasizes the process of reasoning. For example, The Shorter Oxford Dictionary defines "reasoned" as "arrange the thought of in a logical manner, embody reason in; express in a logical form. Also, think out, work out."[22] "Reason" (verb) is defined as "to think in a connected, sensible, or logical manner; to employ the faculty of reason in forming conclusions ..."[23]

Based on these dictionary definitions, the phrase "reasoned award" in its common usage connotes an arbitrator's award that provides at least a cursory explanation of how the arbitrator reached her decision. And in a legal dispute between two opposing parties, this necessarily requires evaluating the parties' key contentions.

Because arbitration is a form of litigation, the legal meaning of "reasoned" should also be considered. Courts and parties are very familiar with various requirements for a reasoned explanation. Texas courts require expert opinions to provide a reasoned basis.[24] Likewise, courts explain in their decisions that they have a "reasoned basis" for a decision or lack a "reasoned basis" for a contrary decision.[25] An order granting a new trial must provide its reasons.[26] An injunction must

**20.** *Id.*

**21.** *Id.* at 290.

**22.** 2 SHORTER OXFORD ENGLISH DICTIONARY 2481 (6th ed.2007).

**23.** *Id.* For other examples, see WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1210 (5th ed.2014) (defining reason as "to think logically about; think out systematically; analyze"); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1037 (11th ed.2003) (defining "reasoned" as "to justify or support with reasons" or "to discover, formulate, or conclude by the use of reason.").

**24.** *Burrow v. Arce,* 997 S.W.2d 229, 236 (Tex. 1999) (affidavit that expert considered relevant facts and concluded that clients' settlements were all fair and reasonable was conclusory because it did "not supply the basis for those opinions. The opinions must have a reasoned basis which the expert ... is qualified to state."); *Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C.,* 180 S.W.3d 889, 892 (Tex.App.–Dallas 2005, pet. denied) (expert must "provide a reasoned basis for his opinion"); *see also Elizondo v. Krist,* 415 S.W.3d 259, 265 (Tex.2013) (expert opinion was conclusory because it lacked "a demonstrable and reasoned basis on which to evaluate his opinion").

**25.** *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 579 (5th Cir.1986); *Aggarwal v. Gonzales,* 165 Fed.Appx. 322, 324 (5th Cir. 2006); *Goodspeed v. Harman,* 39 F.Supp.2d 787, 794 (N.D.Tex.1999); *cf. Goldman v. Weinberger,* 475 U.S. 503, 520, 106 S.Ct. 1310, 1319, 89 L.Ed.2d 478 (1986) (Brennan, J., dissenting) (arguing that military's yarmulke prohibition had no "reasoned basis" and therefore violated First Amendment).

**26.** *In re United Scaffolding, Inc.,* 301 S.W.3d 661, 663 (Tex.2010) (holding order granting new trial "in the interests of justice and fairness" was not "a specific reason" for awarding new trial); *In re United Scaffolding, Inc.,* 377 S.W.3d 685, 688–89 (Tex.2012) (explaining reasons must be "cogent," "legally appropriate," and "specific enough to indicate that the trial court did not simply parrot a pro forma template."); *In re Colum. Med. Ctr. of Las Colinas, Subsidiary, L.P.,* 290 S.W.3d 204, 211, 213 (Tex.2009) (observing that appellate courts must "explain by written opinion their analyses and conclusions as to the issues necessary for final disposition of an appeal" and that trial court must provide its "reasoning," which includes "an understandable, reasonably specific explanation," when it grants new trial); *cf. In re Volkswagen of Am., Inc.,* 22 S.W.3d 462 (Tex.2000) (orig.proceeding) (Hecht, J., dissenting) (contending that trial

state "the reasons" for its issuance.[27] Various federal rules and statutes require courts to provide reasons for their actions.[28] Courts also frequently reject an argument because a party fails to provide any reasoned basis for it.[29] In these contexts, "reasoned" is synonymous with a principled basis.[30]

Courts also speak of reasoned decisions,[31] reasoned analysis,[32] and reasoned explanations[33] when referring to the requirements for some explanation for action taken by a court or government agency.[34]

court that grants a motion for new trial should be required "to state a reasoned basis for its ruling").

27. TEX. R. CIV. P. 683; see El Tacaso, Inc. v. Jireh Star, Inc., 356 S.W.3d 740, 747–48 (Tex. App.–Dallas 2011, no pet.) (observing that "the nature and extent of a trial court's description of the reasons why an applicant will suffer irreparable injury will vary from case to case" and holding that injunction order failed to comply with this rule when "the trial court's temporary injunction order simply recites the conclusory statement that [moving party] has shown that it will suffer an irreparable injury for which it has no other adequate legal remedy.")

28. See, e.g., FED. R. CIV. P. 59(d) (requiring trial court that grants new trial sua sponte to "specify the reasons in its order."); Milena Ship Mgmt. Co. v. Newcomb, 995 F.2d 620, 623 (5th Cir.1993) ("In reviewing an agency action, we inquire whether the agency acted within its authority, adequately considered all the relevant factors, and provided a reasoned basis for its decision."); Arlinghaus v. Ritenour, 543 F.2d 461, 464 (2d Cir.1976) (holding that court should not merely repeat language of rule but should make "brief reasoned statement" for its decision), aff'd, 622 F.2d 629 (2d Cir.1980); see also United States v. Diaz Sanchez, 714 F.3d 289, 293 (5th Cir.2013) (stating that 18 U.S.C. § 3553(c) requires sentencing courts to "provide a reasoned basis for their sentences").

29. See, e.g., Larr v. Minn. Mut. Life Ins. Co., 924 F.2d 65, 67 (5th Cir.1991); Bowers v. ConocoPhillips Co., No. 4:13–CV–3054, 2014 WL 2949446 (S.D.Tex. July 1, 2014); In re Hernandez, No. H–06–4092, 2007 WL 1886279, at *4 (S.D.Tex. June 29, 2007).

30. See, e.g., Hughes v. City of Fort Collins, 926 F.2d 986, 990 (10th Cir.1991) (examining whether proponent of position has articulated reasoned and principled basis for proposed

extension, modification, or reversal of controlling law).

31. Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1419, 179 L.Ed.2d 557 (2011) (Sotomayor, J., dissenting); Cannedy v. Adams, 706 F.3d 1148, 1156 (9th Cir.2013), amended on denial of reh'g, 733 F.3d 794 (9th Cir.2013), and cert. denied, — U.S. —, 134 S.Ct. 1001, 187 L.Ed.2d 863 (2014); Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013), cert. denied, — U.S. —, 134 S.Ct. 234, 187 L.Ed.2d 174 (2013), reh'g denied, — U.S. —, 134 S.Ct. 730, 187 L.Ed.2d 585 (2013); Leonard Pipeline Contractors, Ltd. v. C.I.R., 142 F.3d 1133, 1135 (9th Cir.1998) (holding Tax Court must "spell out its reasoning" and that "[a] reasoned decision as to what is reasonable in this context must bring together the disparate elements and give some account of how the judge has reached his conclusion.").

32. Jupiter Energy Corp. v. F.E.R.C., 407 F.3d 346, 349 (5th Cir.2005) ("[A]n agency must cogently explain why it has exercised its discretion in a given manner" and " 'must supply a reasoned analysis' for any departure from other agency decisions.") (internal quotation marks omitted).

33. Judulang v. Holder, — U.S. —, 132 S.Ct. 476, 479, 181 L.Ed.2d 449 (2011) ("When an administrative agency sets policy, it must provide a reasoned explanation for its action. That is not a high bar, but it is an unwavering one.").

34. CenterPoint Energy Entex v. R.R. Comm'n of Tex., 213 S.W.3d 364, 373 (Tex.App.–Austin 2006, no pet.) (citations omitted) ("[A]n agency must provide a basis for its rejection of uncontradicted, unimpeached testimony that is neither inherently improbable or conclusory. The Commission can reject such uncontradicted evidence if it explains or makes findings that permit courts to review the reasonableness of that rejection, but a failure to explain can result in reversal.").

For example, the Texas Rules of Appellate Procedure require courts of appeals to "write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it." [35] In *Gonzalez v. McAllen Medical Center, Inc.,* [36] the Texas Supreme Court held that an intermediate appellate opinion did not comply with this rule when it "concluded summarily: 'Considering the record in its entirety, we hold that appellants' factual sufficiency challenge fails because the jury's verdict was not against the great weight of the evidence. We overrule appellants' first six issues.'" The Court explained that although detailed evidentiary recitations are unnecessary, "merely stating" that a factual sufficiency challenge is overruled "does not count as providing the 'basic reasons' for that decision." [37] Instead, "a memorandum opinion generally should focus on the basic reasons why the law applied to the facts leads to the court's decision." [38] The Texas Supreme Court reversed and remanded the court of appeals' judgment.[39]

Guidance for measuring whether an arbitrator's award is "reasoned" should also come from the requirement that district courts provide a "reasoned" basis for criminal sentencings. The requirements for a reasonable explanation "are easily recited, but are necessarily resistant to refinement into bright-line rules: the . . . reason-giving requirement is a flexible, context-specific command."[40] Because of these flexibilities, a reasoned basis does not require "a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." [41] Some reasoning may be implicit but clear from the context.[42] In some instances the arbitrator may reject arguments "implicitly and imprecisely." [43]

Applying these rules demonstrates that *Cat Charter*'s definition is overinclusive because it omits the potential that an award may implicitly reject a key contention. In other circumstances it is overinclusive because it could be read—unwisely—as requiring the arbitrator to address every contention, no matter how minor or frivolous, of the losing party. The *Cat Charter* definition is overinclusive if it requires the arbitrator to mention or discuss a party's argument that "lacks any factual

**35.** Tex. R. App. P. 47.4.

**36.** 195 S.W.2d 680, 681 (Tex.2006).

**37.** *Id.*

**38.** *Id.*

**39.** *Id.* at 682. In a similar case, the Court concluded that a court of appeals violated Rule 47.4 when its entire justification "for reversing [a] trial court's judgment [was contained] in [the following] single paragraph: 'After a thorough review of the entire record, we find that the evidence conclusively establishes, as a matter of law, all vital facts to support a finding of payment. We must sustain Scott's legal sufficiency issues because the evidence conclusively establishes the opposite of a vital fact found by the trial judge (*i.e.,* nonpayment).'" *Citizens Nat'l Bank in*

*Waxahachie v. Scott,* 195 S.W.3d 94, 96 (Tex. 2006).

**40.** *See United States v. Diaz Sanchez,* 714 F.3d 289, 293 (5th Cir.2013) (discussing requirement of reasoned basis for sentence).

**41.** *Rita v. United States,* 551 U.S. 338, 356, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007).

**42.** *See id.* ("Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word 'granted' or 'denied' on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear.").

**43.** *See United States v. Spider,* 732 F.3d 767, 769 (7th Cir.2013).

basis or legal merit.".[44] Finally, it is over-inclusive if it requires the arbitrator to mention contentions that "are 'conceptually straightforward,' such that [the parties] may assume, even absent express analysis by the [arbitrator], that the [award] reflects consideration of the argument."[45] These exceptions to the requirement of an explicit mention or discussion of a key contention are appropriate because of the strong federal interest in promoting a prompt and final arbitration.

On the other hand, the *Cat Charter* definition can, in some circumstances, also be underinclusive because it may be necessary not just to mention but to offer a brief reason for rejecting the losing party's key contentions. The major guidepost for determining when an explicit discussion is required is that the award should set forth enough detail, given the circumstances of the case, to show that the arbitrator has considered the losing parties' key arguments and "has a reasoned basis for" rejecting them.[46] An arbitrator writing a reasoned award "must generally speak to arguments that are clearly presented and

in dispute."[47] The arbitrator "need not engage in robotic incantations" of each and every argument, but should address the key arguments.[48]

The award should be reviewed in the context of the proceeding as a whole, including the amount in controversy, the nature of the case, the complexity of the evidence and arguments, and the procedures followed in the arbitration such as whether the rules of evidence were followed, whether a court reporter was used, and whether the parties' contentions were reflected in writing. Thus, "a pragmatic, totality-of-the-circumstances review" should be used to determine whether an arbitrator's award satisfies the contractually-agreed requirement of a reasoned award.[49]

## C. Conclusion: Reasoned awards must give an explanation

Each of these contexts—dictionaries, courts, and the reasons parties seek an explanation in an arbitration award—suggest that a "reasoned award" must offer

---

**44.** *See United States v. Simmons*, 587 F.3d 348, 361 (6th Cir.2009).

**45.** *Id.* (quoting *United States v. Conner*, 516 F.3d 382, 388 (6th Cir.2008) (en banc)).

**46.** *See Rita*, 551 U.S. at 356, 127 S.Ct. at 2468 (treating sentencing orders, which require a judge to "state" his reasons," as similar to "reasoned decisions").

**47.** *See Simmons*, 587 F.3d at 361. (discussing requirements for reasoned decision for sentencing); *see also Diaz Sanchez*, 714 F.3d at 294 (a reasoned award should include "a few words ... rejecting" the losing party's key contentions).

**48.** *See Diaz Sanchez*, 714 F.3d at 294; *cf. United States v. Knight*, 613 F.3d 1172, 1173 (8th Cir.2010) (stating that in sentencing order, the district court "need not specifically respond to every argument made by the de-

fendant, or mechanically recite each" statutorily-prescribed sentencing factor) (quoting *United States v. Struzik*, 572 F.3d 484, 487 (8th Cir.2009)); *Spiller*, 732 F.3d at 769 ("While a sentencing court is not required to explain its view on every argument in mitigation or aggravation, it should give reasons to explain the prison sentence imposed."); *Ghassan v. INS*, 972 F.2d 631, 636 (5th Cir. 1992), *cert. denied*, 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993) (internal citations omitted) ("The [Board of Immigration Appeals] need not 'write an exegesis on every contention.' ... [but] its opinion must reflect that 'it has heard and thought and not merely reacted.' ").

**49.** *See Diaz Sanchez*, 714 F.3d at 294 (adopting "a pragmatic, totality-of-the-circumstances review into whether the district court evaluated the parties' sentencing arguments and rooted its sentence in permissible sentencing factors.").

some basic explanation for either rejecting the losing party's key contentions or accepting the prevailing party's opposing response unless the contentions are unclear, frivolous, their rejection is so conceptually straightforward that the justification for rejecting them is implied or is unnecessary, or the rejection of the contention is implicit in other portions of the award.

To be clear, the omitted issue must be a key issue. Admittedly, determining a party's key contentions may be difficult, particularly when, as here, a party does not put those contentions in writing. But Stage's third contention was potentially dispositive and argued more than once in the oral argument, which a court reporter transcribed, before the arbitrator. Gunnerson's counsel conceded at oral argument that Stage raised its notice and cure defense "a lot" during the arbitration. Finally, Stage's three contentions correspond to the three requirements for "good cause" in the written contract. Therefore, I have little difficulty treating it as a key contention.

Second, as discussed earlier, an arbitrator need not address contentions that are not clearly presented, conceptually straightforward, or frivolous on their face no matter how much time a party spends on the issue. Even when the issue meets these criteria, an award may contain reasoning that is implicit but clear from the context.

The entirety of the award as well as the circumstances of the dispute and the arbitration proceeding may make it unnecessary to address a contention. But in this case no circumstances justify the failure to address Stage's notice and opportunity-to-

cure defense. That defense was a major part of Stage's case and potentially case dispositive. Stage's argument on the issue were not frivolous or unclear. Nor is the arbitrator's rejection of them conceptually straightforward or simple. Finally, the award does not implicitly address this contention. Thus, under both the *Cat Charter* definition and my suggested definition, the award is not reasoned.[50]

Evelyn V. Keyes, Justice, dissenting.

I respectfully dissent. This case construes, as a matter of first impression in Texas state court, the standards for a "reasoned award" in arbitrations brought under the Federal Arbitration Act (FAA).[1] I believe the majority's decision to reverse and remand this case is contrary to the controlling federal authority that the lead opinion relies upon and purports to follow. I believe the award is sufficient to satisfy the standards of a reasoned award under the FAA and that it is a mistake to send this case back to the arbitrator to address her rejection of one of appellant Stage Stores, Inc.'s defenses in making her award. Both the lead opinion and the concurrence mistake an *argument*, which need not be addressed in a reasoned award, and an *issue*, which must be disposed of in a reasoned award—as was done here. In my view, affirmance of the arbitration award is the natural result of the argument from federal authority relied upon in the lead opinion and the natural holding under controlling federal authority. It is the disposition that is incorrect.

I would affirm the trial court's confirmation of the arbitration award.

---

**50.** The arbitrator's failure to explicitly address Stage's materiality contention is an example of when a contention may be implicitly rejected because, as the Court notes, the award specifically mentions this contention

by Stage so the parties know she considered it.

**1.** *See* 9 U.S.C. §§ 1–16.

## Background

Following an arbitration of an employment dispute between Stage Stores and former employee, appellee Jon Gunnerson, the arbitrator issued a reasoned award disposing of Gunnerson's claim that Stage Store's wrongfully refused to pay benefits due to him based on his "good reason" for terminating his employment contract. The lead opinion sets out the four specific rulings made by the arbitrator:

> (1) that a valid contract existed between the parties; (2) that Stage's "actions in restructuring the organization and removing [Gunnerson] from a direct reporting relationship to the CEO diminished [Gunnerson's] status, thereby allowing [Gunnerson] to terminate his position for good reason pursuant to paragraph 4 of the Agreement"; (3) that Gunnerson was entitled to recover attorneys' fees; and (4) that Gunnerson "failed to meet his burden of proof regarding the present value of future stock options."

Op. at 853.

Stage Stores applied to vacate this arbitration award, essentially arguing that, in failing to specifically address each of its defenses to Gunnerson's claim, the arbitrator exceeded her powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* Op. at 854 (citing 9 U.S.C. § 10(a)(4)). The trial court denied Stage's application seeking to vacate the arbitration award and granted Gunnerson's application to confirm the award.

## Discussion

Stage Stores complains that the arbitrator failed to mention one of its *defenses* in the award, namely that the contract at issue required notice of the grounds supporting good reason and an opportunity to cure before Gunnerson's contract could be terminated. It contends that, under the doctrine of *functus officio*, which declares that arbitral judgments must be complete, it is entitled to a new arbitral proceeding. The panel concludes that it "cannot fill in this gap for the arbitrator," but that it "can, however, have the trial court remand it to the arbitrator to decide *an issue which was raised but not completely adjudicated* by the original award." Op. at 863 (emphasis added).

I would hold that the parties raised no *issue* that the arbitrator did not completely decide. Only a *defense* was not mentioned, and that defense was necessarily rejected by the disposition of the encompassing issue. The arbitrator did dispose of the issue raised by Stage Stores. She stated in the arbitration award that Gunnerson was "allow[ed] to terminate his position for good reason pursuant to paragraph 4 of the Agreement," and she set out that Gunnerson was entitled to receive his attorney's fees but that he failed to meet his burden of proof regarding the present value of stock purchases. The issue of whether he was allowed to terminate his position has been completely decided, and there is no basis for returning this case to the arbitrator.

Stage Stores' real complaint is that the arbitrator did not specifically address an *argument*—not the issue requiring resolution. And this assertion is insufficient to establish that that arbitrator "exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," as required to vacate the award here. *See* 9 U.S.C. § 10(a)(4). By deciding the actual issue submitted—i.e., that Stage Stores' "actions in restructuring the organization and removing [Gunnerson] from a direct reporting relationship to the CEO diminished [Gunnerson's] status,

allow[ed] [him] to terminate his position for good reason pursuant to paragraph 4 of the Agreement"—the arbitrator necessarily decided Stage Stores' defenses challenging Gunnerson's showing of good cause for termination. Nothing can be added to the award to make it complete by sending it back to the arbitrator to hear a defense she has already heard and rejected—as the lead opinion acknowledges.

Remand in this case is, in my view, directly contrary to the spirit and purpose of the FAA, the federal case law construing reasoned arbitral awards, and the *functus officio* doctrine the lead opinion seeks to apply. None of the law cited in the lead opinion supports returning a case to the arbitrator to address each argument made by the parties. Rather, all of the cases cited in the opinion hold to the contrary. In my view, Stage Stores' argument is identical to the type of challenge to a reasoned award in federal arbitration that controlling federal opinions have consistently found to be without merit. I disagree, therefore, that remand is supported by the law controlling reasoned awards subject to the FAA.

The *functus officio* doctrine is the "rule that bars an arbitrator from revisiting the merits of an award once the award has been issued." *Brown v. Witco Corp.*, 340 F.3d 209, 218 (5th Cir.2003) (cited in lead opinion, Op. at 856. The exceptions are limited. An arbitrator can (1) correct a mistake which is apparent on the face of his award; (2) decide an issue which has been submitted but which has not been completely adjudicated by the original award; or (3) clarify or construe an arbitration award that seems complete but proves to be ambiguous in its scope and implementation. *Id.* at 219. In *Brown*, the Fifth Circuit added that, "in the absence of any contractual provision or formal arbitration rule expressly to the con-

trary," an arbitrator "may exercise his power to clarify the terms of an award when he is asked to do so by parties mutually and without any party's objection within a reasonable period of time." *Id.* None of these circumstances applies here. The reasoned award requested by the parties and made by the arbitrator presents no mistake on its face, decides each issue submitted, and contains no ambiguity that prevents its being readily implemented. Therefore, the circumstances requiring remand to the arbitrator under exceptions to the *functus officio* doctrine as enunciated in *Brown* do not exist.

The Eleventh Circuit in *Cat Charter, LLC v. Schurtenberger*—a case likewise relied upon in the lead opinion—described the requirements of a reasoned award. It stated, "Logically, the varying forms of awards may be considered along a 'spectrum of increasingly reasoned awards,' with a 'standard award' requiring the least explanation and 'findings of fact and conclusions of law' requiring the most," so that "a 'reasoned award is something short of findings and conclusions but more than a simple result.'" 646 F.3d 836, 844 (11th Cir.2011) (quoting *Sarofim v. Trust Co. of the W.*, 440 F.3d 213, 215 n. 1 (5th Cir. 2006)); *see also Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 473 (5th Cir.2012) (accord). Thus, the *Cat Charter* court concluded, "Strictly speaking, then, a 'reasoned' award is an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of an act— the 'act' here being, of course, the decision of the [arbitration] Panel." 646 F.3d at 844 (emphasis in original.)

In *Cat Carter*, the appellate court refused to return the case to the arbitrator in response to the defendants' complaint that the award's statement that the plaintiffs had proved their claims "by the great-

er weight of the evidence" added no explanatory value to the award "on what is most certainly a 'bare' or 'standard' award." *Id.* The court held, to the contrary, that the arbitrators' statement in the award was "greater than what is required in a 'standard award,' and that is all we need decide.'" *Id.* at 845. It pointed out that if the parties had wanted a greater explanation they could have requested findings of fact and conclusions of law, but they did not. *Id.* The *Cat Charter* court concluded:

> We decline to narrowly interpret what constitutes a reasoned award to overturn an otherwise apparently seamless proceeding. The parties received precisely what they bargained for—a speedy, fair resolution of a discrete controversy by an impartial panel of arbitrators skilled in the relevant areas of the law. To vacate the Award and remand for an entirely new proceeding would insufficiently respect the value of arbitration and inject the courts further into the arbitration process than Congress has mandated.

*Id.* at 846.

The Fifth Circuit cited this conclusion approvingly in *Rain CII Carbon,* which is also relied upon by the lead opinion. 674 F.3d at 473–74. In both *Rain CII Carbon* and *Cat Charter,* the federal circuit court construed federal arbitration law and found an award that minimally addressed the issues sufficient to withstand a party's request for vacatur. *See Rain CII Carbon,* 674 F.3d at 474 (holding sufficient for reasoned award "the arbitrator's statement that, based upon all of the evidence, he found that the initial price formula should remain in effect" after delineating in previous paragraph "that Conoco had failed to show that the initial formula failed to yield market price, a contention that the arbitrator obviously accepted");

*Cat Charter,* 646 F.3d at 840–41, 845 (holding sufficient reasoned award that declared that claimants had proven their Deceptive and Unfair Trade Practices and breach of contract claim "by the greater weight of the evidence," that held that claimants were substantially prevailing parties and respondents were not, awarded claimants their attorney's fees, ordered respondents to "jointly and severally pay" claimants specified damages, fees, costs, and interest, and granted plaintiffs lien on boat).

The Sixth Circuit, like the *Cat Charter* court, refused to overturn the award and to return the case to the arbitrator for clarification, finding that the arbitrator "minimally satisfied the explanation requirement stated in the arbitration agreement" by stating, with respect to each of the plaintiff's three claims that the plaintiff "has not met his burden of proof." *Green v. Ameritech Corp.,* 200 F.3d 967, 971, 977–78 (6th Cir.2000).

By contrast to these cases holding that the requirements for a reasoned award were satisfied, the Fifth Circuit declined jurisdiction over the trial court's order sending a case back to the arbitrators under the *functus officio* doctrine to complete the task assigned them in a case where the award issued by the arbitral panel was "patently ambiguous." *Murchison Capital Partners v. Nuance Commc'ns, Inc.,* 760 F.3d 418, 423 (5th Cir.2014) (stating, where trial court returned case to arbitrators to determine whether part of determination made in award was related only to benefit-of-the-bargain damages request of party or also to out-of-pocket losses, that "declining jurisdiction over the district court's order and permitting the arbitration panel to clarify its award is necessary given our deferential standard of review of arbitration awards").

Here, there is no assertion of ambiguity, nor could there be. The arbitrator clearly and expressly found "good reason pursuant to paragraph 4 of the Agreement" for Gunnerson to terminate his position due to Stage Stores' "actions in restructuring the organization and removing him from a direct reporting relationship to the CEO," and awarded him his attorney's fees. There is nothing to clarify with respect to Stage Stores' defense of notice and opportunity to cure and nothing to add: the arbitrator rejected Stage Stores' defense as grounds preventing Gunnerson from terminating the contract, and it deemed him a prevailing party entitled to attorneys' fees. There is thus no basis for applying the exception to the *functus officio* doctrine for lack of complete adjudication. The award completely disposes of the termination issue.

In my view, it is clear that the arbitrator did enough in this case and that there are no grounds for sending it back to the arbitrator under the ambiguity or lack of clarity exceptions to the *functus officio* doctrine. The reasoned award at issue is at least as comprehensive and detailed as the arbitral awards at issue in *Rain CII Carbon*, *Cat Charter*, and *Green*. None of those cases sent a completely decided arbitration award addressing every submitted issue back to the arbitrator for a second attempt at arbitration, and none required that every argument or defensive theory— as opposed to every issue—be disposed of. Indeed, one must seriously question—as the federal courts that decided these federal arbitration law cases did—what purpose is served by remand other than to introduce into arbitration the same lengthy and costly court procedures that the parties sought to avoid by agreeing to arbitration. And, worse, in this case, either the arbitrator will reach a completely different result on the same facts or the arbitrator will reach the same results, resulting in duplicative litigation. In neither case will the losing party have recourse to the courts to second-guess the arbitrator's second-time-around decision, unless the state trial judge or appellate panel decides that the law was not sufficiently explained to satisfy its own independent standards of review and sends it back for the arbitrator to try yet again to satisfy the state courts on the federal legal issues of sufficiency of the reasoned award.

The Eleventh Circuit set out in *Cat Charter* exactly *why* a reviewing court should not require the detailed findings and conclusions of law the majority imposes on the arbitrator in this case when the parties have merely requested a reasoned award. The court stated:

> Our conclusion today holds consistent with the general review principles embodied in the FAA. The Supreme Court has read §§ 9–11 of the FAA
>
> > as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in the post-arbitration process.

*Cat Charter*, 646 F.3d at 845 (quoting *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588, 128 S.Ct. 1396, 1405, 170 L.Ed.2d 254 (2008) (citations and internal quotation marks omitted)).

To send this case back to the arbitrator is, to me, to pervert the ends of federal arbitration as stated by the United States Supreme Court in *Hall Street v. Mattel*, and as recognized by the Eleventh Circuit in *Cat Charter*, and to impose on arbitra-

tions subject to the FAA heightened state court standards of review of reasoned arbitration awards that are clearly improper under, and superseded by, controlling federal law. I, therefore, cannot join either the lead opinion or the judgment of the majority. Much less can I join the concurrence, which would require even more of the arbitrator for every reasoned award.

## Conclusion

I would affirm the arbitration award.